## NINE THOUSAND BUNCHES OF BANANAS.

### THE CURLEW.

#### HENRY et al. v. BOWRING et al.

#### BOWRING et al. v. HENRY et al.

(Circuit Court of Appeals, Fourth Circuit. May 23, 1893.)

#### No. 35.

1. SHIPPING — CHARTER PARTY—EXCEPTED PERILS—BREAKING OF MACHINERY.
   The breaking of a junk ring on a steamship engine cylinder must be held an "accident of the sea and of the machinery," within the meaning of a charter party exempting the ship from liability for losses to cargo caused by such dangers, when such ring performed its function without jar or fault prior to the breakdown, and no flaw was disclosed by an examination of the broken pieces. 51 Fed. Rep. 246, affirmed.

2. SAME—DELAY—DAMAGE TO CARGO—SHIPPER'S FAULT.
   The charterers of a steamship, immediately on her departure from Baltimore, ordered by telegraph that a cargo of bananas should be cut and placed at the landing in Jamaica by the time at which the steamer would arrive in due course. The ship, however, was delayed about three days by an accident to her machinery, and the bananas, having been promptly cut, greatly deteriorated in the mean time. It was the custom of the trade to order bananas in advance, but in no other known instance had bananas been ordered cut before the arrival of the ship in the immediate vicinity. *Held*, that the proximate cause of the loss was a premature cutting of the bananas, and the ship was not liable in damages.

Appeal from the District Court of the United States for the District of Maryland. Affirmed.

Robert H. Smith and John H. Thomas, for Henry Bros. & Co.

T. Wallis Blackistone, for The Curlew.

Before GOFF, Circuit Judge, and DICK and HUGHES, District Judges.

HUGHES, District Judge. In this case there is a libel by Bowring and others, representatives of the steamship Curlew, for the freight due on a cargo of bananas brought by her from Jamaica to Baltimore in July, 1890, amounting to $3,854.77; and there is a counterlibel by the owners of the bananas, Henry Bros. & Co., claiming damages to the amount of $4,000, resulting from the bananas brought to Baltimore on July 14, 1890, having become de-

cayed by reason of a delay of three days in loading them at Jamaica. The libels are heard together.

At the time of this voyage in which the Curlew sailed from Baltimore on the 24th of June, and returned on the 14th of July, 1890, the steamer was under charter practically to Henry Bros. & Co., who were importers of bananas from Jamaica into Baltimore, the charter party providing that the steamer should be exempt from liability for losses to cargo from "all dangers and accidents of the seas, machinery, boilers, and steam navigations."

The Curlew set out from Baltimore on the 24th of June, and proceeded on her voyage to Jamaica until the 1st of July without serious accident. On that day, after encountering some roughness of sea, the junk ring of her high-pressure cylinder broke, and the engines had to be stopped until the machinery connected with that cylinder could be detached, and the broken parts taken out, after which she proceeded under one engine, making very nearly her usual speed. In consequence of this accident the steamer was delayed several hours in arriving at Montego, one of her places for taking on cargo in Jamaica, which place she reached on the evening of July 2d. One day was lost after her arrival at that place in a search for a piece of iron suitable for replacing the broken junk ring. The whole time lost after the accident, before the cargo of bananas was fully loaded at Montego, St. Lucea, and St. Ann's Bay, the places to which they had been brought for shipment, was about three days. The evidence in the case shows that on the same day, (the 24th of June,) when the Curlew set out from Baltimore on this voyage, Henry Bros. & Co. sent orders by telegraph to their agents in Jamaica to have the bananas intended for the Curlew already cut and brought to the landing places for shipment by the time (about the 2d of July) when the steamer would in due course arrive. It also shows that this order was punctually obeyed, and that the bananas were cut and piled up at the landing places by and before the 2d of July awaiting the steamer, and protected from the sun of that hot season and climate only by canvas. It shows that because of this exposure at the landing places before being put on board the Curlew, which left Jamaica for Baltimore on the 5th day of July, the fruit had so ripened by the time of reaching Baltimore as to be incapable of being sent off from there to distant places of consumption, and, except about $2,000 worth, which was sold to local dealers, soon rotted, and had to be taken off and dumped into the outer bay. It is for the damages thus sustained by Henry Bros. & Co. that they bring their cross libel.

The great preponderance of evidence shows that the breaking of the junk ring in one of the cylinders of the engine of the Curlew was an accident that could not be foreseen; that there was no flaw in the ring that could be detected in examining its broken pieces after the accident; that, from its having performed its function without jar or fault for six days of the voyage anterior to the accident, the inference is reasonable that its breaking was from some cause exterior to itself, and not from any defect of its own ; and

therefore this breakage was one of those accidents of the sea and of the machinery of the ship from the consequences of which the charter party exempted the ship.

The evidence shows that while the custom of this banana trade was universal to order the bananas in Jamaica in advance of the arrival of steamers sent for them, yet that in no known instance, except in the case now before us, were bananas ordered to be actually cut off and brought to the places of shipment before the steamer which was intended to receive them was positively known to have arrived at or in the immediate vicinity of the places where they were to be received. Captain Manuel, master of the Curlew, testified that he had commanded that steamer in that trade for more than a year; that the custom was to cut the fruit after the ship had arrived at Jamaica; and that he knew of but a single instance in which it had been cut before such arrival, and that was the instance of the cargo under consideration. Diligent endeavor was made by counsel for the owners of the cargo to prove that orders to cut in advance of arrival had been given, but without success. The conclusion is irresistible from the evidence that the order to cut before arrival, given by Henry Bros. & Co. on the 24th of June, for this cargo, was contrary to the custom of the trade, extremely hazardous in the hot season, was the cause of the premature ripening of the fruit by the time it reached the port of Baltimore, and of the loss sustained by its owners.

We are of opinion, from all the evidence shown in the voluminous record in this case, that the breaking of the junk ring of the Curlew, which produced the delay of three days to which she was subjected, was an accident of the sea and machinery, from which she was exempt from liability by the charter party.

We are further of opinion that the order of the 24th of June, sent by appellees to Jamaica, that the bananas should be cut and brought to the places of shipment in advance of the steamer's actual arrival, was imprudent, contrary to the custom of the trade, and was the real cause of the premature decay of the fruit, and of the loss which resulted to them, for which loss the steamer is in no manner responsible.

The decree below is affirmed.